The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

GATHER CHURCH,

        *Plaintiff*,

   v.

LEWIS COUNTY, SEAN SWOPE in his official capacity as Lewis County Commissioner, LINDSEY POLLOCK in her official capacity as Lewis County Commissioner, SCOTT BRUMMER in his official capacity as LEWIS COUNTY COMMISSIONER, SHERIFF ROBERT SNAZA in his official capacity as Lewis County Sheriff, and MEJA HANDLEN, in her official capacity as Director of the Lewis County Public Health & Social Services.

        *Defendants*.

Case No. 3:25-cv-05850-DGE

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:

December 2, 2025

HEARING DATE:

December 4, 2025 9:30 a.m.

Pl.'s Reply in Support of - 1
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

# Table of Contents

TABLE OF AUTHORITIES ........................................................................................................... 3

INTRODUCTION .......................................................................................................................... 5

STATEMENT OF FACTS ............................................................................................................. 5
    I.    Undisputed Facts ................................................................................................... 5
    II.   Inaccurate Factual Assertions ............................................................................... 6
    III.  Assertions Lacking Evidentiary Basis .................................................................. 6
    IV.  Defendants' "Public Health" Rationale Contradicts and Misrepresents Research ............ 7

ARGUMENT .................................................................................................................................. 8
    I.    Plaintiff Is Likely to Succeed on its ADA and Section 504 Claims ..................... 8
        A.   Plaintiff Has Standing ................................................................................ 8
        B.   Plaintiff's Patients Have Disabilities ........................................................ 9
            1.   Gather's SSP Provides Health Services in Connection with Drug Rehabilitation ...... 9
            2.   Patients Are "Otherwise Entitled" to the SSP's Services ........................... 11
        C.   The Ordinance Discriminates on the Basis of Disability ....................... 11
        D.   Defendants' "Public Health" Interests Cannot Excuse Discrimination .......... 14
    II.   Preemption .......................................................................................................... 15
    III.  WLAD ................................................................................................................ 15
    IV.  Irreparable Harm ................................................................................................ 16
    V.   Balance of Equities ............................................................................................ 17

CONCLUSION ............................................................................................................................. 17

Pl.'s Reply in Support of - 2
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

# TABLE OF AUTHORITIES

**Cases**

*A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356 (4th Cir. 2008) .................................... 8
*Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999) .................................................. 15
*Arc of Cal. v. Douglas*, 757 F.3d 975 (9th Cir. 2014) .............................................................. 16
*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ........................................... 17
*Bay Area Addiction Rsch. And Treatment v. City of Antioch*, 179 F.3d 725 (9th Cir. 1999) .. 11, 14
*Bay Area Addiction Rsch. And Treatment, Inc. v. City of Antioch*, 2000 WL 33716782 (N.D. Cal. Mar. 16, 2000) ........................................................................................................... 6
*Calif. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) .. 16
*Cannabis Action Coal. v. City of Kent*, 351 P.3d 151 (Wash. 2015) ....................................... 15
*Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165 (2d Cir. 1998) ............................................ 13
*Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir. 1995) .................................................. 14
*Commure, Inc. v. Canopy Works, Inc.*, 792 F.Supp.3d 971 (N.D. Cal. 2025) .......................... 17
*Cota v. Maxwell-Jolly*, 688 F.Supp.2d 980 (N.D. Cal. 2010) ................................................... 12
*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) ......................................................... 12, 14
*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664 (9th Cir. 2023) ................................................................................................................ 16
*Guerra v. W. L.A. Coll.*, 812 F.App'x 612 (9th Cir. 2020) ....................................................... 12
*Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025) ............................................... 8
*James v. City of Costa Mesa*, 700 F.3d 394 (9th Cir. 2012) ...................................................... 9
*Marks Org., Inc. v. Joles*, 784 F.Supp.2d 322 (S.D.N.Y. 2011) .............................................. 16
*McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135 (11th Cir. 2014) .................. 8
*N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010) ................................................... 17
*New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293 (3d Cir. 2007) .................. 6
*RHJ Med. Ctr. v. City of Dubois*, 754 F.Supp.2d 723 (W.D. Pa. 2010) .............................. 10, 11
*Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004) ..................................................................... 12, 17
*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ..................................................................... 15
*Smith v. Barton*, 914 F.2d 1330 (9th Cir. 1990) ..................................................................... 14
*Spokane Cnty. Health Dist. v. Brockett*, 839 P.2d 324 (Wash. 1992) ....................................... 5
*Taylor v. Wexford Health Sources, Inc.*, 737 F.Supp.3d 357 (S.D. W.Va. 2024) .................... 11
*United States v. Lillard*, 935 F.3d 827 (9th Cir. 2019) ............................................................ 10
*Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000) ................................................... 8

**Statutes**

29 U.S.C. § 794a ......................................................................................................................... 8
42 U.S.C. § 12132 ..................................................................................................................... 14

Pl.'s Reply in Support of - 3  
Mot. for Prelim. Inj.  
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union  
425 California St., 7th Floor, San Francisco, CA 94104  
212-549-2500

42 U.S.C. § 12210 ............................................................................................................. 9, 10, 11
LCC § 8.80.010 ........................................................................................................................... 9
LCC § 8.80.020 ......................................................................................................................... 15
LCC § 8.80.050 ......................................................................................................................... 15
LCC § 8.80.160 ......................................................................................................................... 15
Wash. Rev. Code § 49.60.030 .................................................................................................. 15
Wash. Rev. Code § 49.60.040 .................................................................................................. 15
Wash. Rev. Code § 69.50.4121 ................................................................................................ 15

**Other Authorities**

135 Cong.Rec. S10765-01, 1989 WL183216 ............................................................................11
*Prohibiting Cashless Retailers and Protecting the Impoverished*, 37 Ga. St. U.L.Rev. 1045
    (2021) ................................................................................................................................... 13

**Regulations**

28 C.F.R. Pt. 35, App. B ........................................................................................................... 14
28 C.F.R. Pt. 35, App. A ........................................................................................................... 12

**Books**

Black's Law Dictionary (6th ed. 1990) ..................................................................................... 10
Merriam-Webster Collegiate Dictionary (9th Ed. 1983) .......................................................... 10

Pl.'s Reply in Support of - 4
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

# INTRODUCTION

For years, arguments against syringe services programs ("SSPs") have remained the same: SSPs increase drug use and syringe litter and discourage people from seeking treatment. *Spokane Cnty. Health Dist. v. Brockett*, 839 P.2d 324, 331 (Wash. 1992). But, for three decades, empirical research has demonstrated that, in fact, SSPs reduce disease transmission and syringe litter, and increase access to treatment. Dkt. 25-6, Ex. A. Accordingly, the Washington State Department of Health ("DOH") "strongly supports SSPs as an essential component to a comprehensive response to addressing substance use, the overdose crisis, and preventing infectious diseases." *Id.* Defendants are unable to refute this robust public health consensus and have offered no reliable evidence to the contrary. Rather, the record establishes that Lewis County Ordinance 1354 ("the Ordinance") discriminates on the basis of disability and is pre-empted by state law. Because the Ordinance poses an ongoing threat to the health of Gather's patients and Gather's religious mission, the Court should grant Plaintiff's motion.

# STATEMENT OF FACTS

## I. Undisputed Facts

Defendants fail to dispute and therefore concede the following facts:

DOH funds SSPs throughout Washington, including Gather's, because research confirms SSPs reduce disease transmission, infection, and overdose while facilitating access to drug rehabilitation. *Id.*; Dkt. 25-7, p. 8:18-9:17, 12:4-21:5.

The Ordinance imposes restrictions only on Plaintiff's SSP, not other health services. Since enactment, the average number of patients who access Gather's SSP each month has dropped from 400 to 11, and even fewer patients with mobility or mental health disabilities have accessed the SSP. Dkt. 25-2, p. 12:8-20; Dkt. 25-3, p. 3:18-5:7, 6:22-7:26.

The Ordinance prohibits Gather from distributing fentanyl and xylazine tests, sterile material, and smoking supplies. Defendants do not dispute these supplies save lives. Defendants

Pl.'s Reply in Support of - 5
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

admit smoking supplies reduce syringe litter but provide no justification for the supplies ban. Dkt. 47, p. 3:16-24.[1]

Gather's patients now face dramatically elevated rates of disease transmission, infection, and overdose. Dkt. 25-7, p. 25:16-26:23.

## II. Inaccurate Factual Assertions

Defendants assert Gather's mobile SSP served only one location, relying on a plainly inaccurate year-old DOH webpage that contradicts Gather's sworn testimony and its reports to DOH. Dkt. 42, p. 6:5-19; Meckle Reply Decl. ¶¶4-5; Westergard Reply Decl. ¶9. Defendants also assert Gather stopped operating its mobile SSP in September 2023. Dkt. 42, p. 6:20-21 (citing Plaintiff's proposed order). But after the Blakslee Junction encampment sweep, Gather *adapted* its mobile program, including by traveling "on foot to local encampments to offer sterile syringes and other supplies." Dkt. 25-2, p. 9:20-22.

## III. Assertions Lacking Evidentiary Basis

Defendants claim, without any empirical evidence, that Gather's mobile SSP jeopardized public health and that the Ordinance alleviated these risks. Courts routinely reject such assertions that lack data directly linking services for disabled people to adverse public health consequences and fail to differentiate other likely causes. *Bay Area Addiction Rsch. And Treatment, Inc. v. City of Antioch*, 2000 WL 33716782, at *8-12 (N.D. Cal. Mar. 16, 2000); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 306 (3d Cir. 2007).

Four law enforcement officers, none of whom have public health backgrounds or consulted with public health experts, speculate that Gather's mobile SSP increased syringe litter, drug use, and crime, and grew encampments, and that the Ordinance decreased syringe litter and overdoses. Dkt. 42, p. 4:9-5:2, 7:23-8:15; Dkt. 44, p. 3:11-4:2; Dkt. 46, p. 3:21-22; Dkt. 47, p. 3:16-21; Dkt. 49, p. 3:16-18. These Declarants fail to offer empirically sound justifications for their claims. They make assertions about the cause of needle litter, and other negative outcomes,

---

[1] Defendants fail to address the supplies ban, waiving its defense.

Pl.'s Reply in Support of - 6  
Mot. for Prelim. Inj.  
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union  
425 California St., 7th Floor, San Francisco, CA 94104  
212-549-2500

without offering any data establishing a baseline or like-to-like comparisons. *See* Pugel Reply Decl. ¶¶4-15. Declarants fail to offer even limited observations about other sites the SSP visited—Winlock and Packwood.

These declarants also lack data directly linking syringe litter, crime, homelessness, or overdoses to Plaintiff's SSP. Dkt. 42, p. 4:9-5:12. Nor do they differentiate these outcomes from likely explanations, including the Blakeslee Junction sweep, changes in drug potency, and normal fluctuations in syringe litter and criminal activity. Indeed, Sheriff Snaza declares only that he "believe[s]" Gather's SSP affected public health, Dkt. 44, p. 4:3-22.

Officer Denham asserts, based on a handful of conversations, that Gather failed to make referrals to drug treatment to people at Blakeslee Junction. Dkt. 48, p. 3:19-4:1. Yet, Gather's sworn testimony shows that people entered Gather's treatment program from Blakeslee Junction, which Defendants concede. Dkt. 25-2, p. 8:19-9:2; Dkt. 25-3, p. 4:14-5:7; Meckle Reply Decl. ¶47; Dkt. 42, p. 5:9-12.

Finally, Defendants wrongly assert that "the treatment rate has risen to over 18%." Dkt. 42, p. 13:4-10. But this figure compares the average number of people the SSP now refers to treatment (2) to the average number it serves per month (11), ignoring that the *total* number of referrals has fallen by *two-thirds sin*ce the Ordinance was enacted. Dkt. 25-2, p. 12:21-25.

### IV. Defendants' "Public Health" Rationale Contradicts and Misrepresents Research

Defendants' health expert repeatedly misrepresents her sources and makes conclusions without the support of any peer-reviewed studies. Dr. Caldwell claims 1:1 exchanges reduce syringe litter. Dkt. 45, p. 6:1-14. But her sources conclude the opposite: 1:1 exchanges are "***not*** recommended," and are linked to *increased* infectious diseases, whereas need-based distribution "does not increase needle waste," and is recommended. Bluthenthal Reply Decl. ¶¶7-13. Caldwell claims SSPs near residential areas "increase[] the likelihood of … open-air drug use," Dkt. 45, p. 8:5-10, yet cites a source stating the opposite: SSPs *do not* increase nearby crime. Bluthenthal Reply Decl. ¶¶7-13. These repeated misrepresentations undermine

Pl.'s Reply in Support of - 7
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

Caldwell's conclusory attacks on mobile SSPs. *Id.* ¶¶14-21. And Caldwell's failure to distinguish *any* of the peer-reviewed studies Dr. Bluthenthal cited establishing the efficacy of Gather's mobile SSP diminishes her credibility. *Id.* ¶¶39-41.

## ARGUMENT

### I. Plaintiff Is Likely to Succeed on its ADA and Section 504 Claims

#### A. Plaintiff Has Standing

Defendants incorrectly argue that Plaintiff invokes associational standing. Dkt. 42, p. 9:19-19:18. But Plaintiff's standing arises from its own injuries in fact.[2] *See Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025) ("Organizations are entitled to sue on their own behalf for injuries they have sustained."). The Ordinance curtails a core aspect of Gather's operations—the SSP—and prevents Gather from addressing the health needs of people with SUD. It also prevents Gather from fulfilling its religious mission. These injuries are traceable to the Ordinance, and redressable by an order enjoining the Ordinance's enforcement.

Gather can rely on its *own* injury-in-fact to bring discrimination claims on its patients' behalf specifically because Congress has relaxed *prudential* standing requirements in two ways. First, the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") enforcement clauses authorize suit by "any person alleging discrimination", 42 U.S.C. § 12133, and "any person aggrieved" by discrimination. 29 U.S.C. § 794a(a)(2); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 48 (2d Cir. 1997) ("Title II provides relief to any person alleging discrimination").

Second, the ADA allows suit by organizations "injured because of their association with a disabled person." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014). Here, Gather was injured because its SSP provides services designed for patients with SUD and mobility and mental health disabilities.

---

[2] Courts have uniformly held that organizations can sue on their own behalf to enforce the ADA, subject only to Article III limitations. *E.g.*, *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 364 (4th Cir. 2008); *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 47-49 (1st Cir. 2000).

Pl.'s Reply in Support of - 8
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

### B. Plaintiff's Patients Have Disabilities

Plaintiff's patients have SUD, mobility disabilities, and mental health disabilities. Dkt. 25, p. 16:22-17:3. Defendants do not contest that patients' mobility and mental health impairments constitute disabilities that support independent discrimination claims, nor could they. *See James v. City of Costa Mesa*, 700 F.3d 394, 397 n.3 (9th Cir. 2012) ("[A] person who [uses illegal drugs] is an individual with a disability if (s)he has another condition that rises to the level of a disability."). Instead, they contend Gather's patients are not disabled for their discrimination claims based on SUD because the SSP does not provide "health services" or "services provided in connection with drug rehabilitation" to which patients are "otherwise entitled." Dkt. 42, p. 11:9-14:12.

But Defendants' argument relies on a misinterpretation of the Health Services Provision, ignores health benefits of SSPs, and contradicts the provision's text and design.

### 1. Gather's SSP Provides Health Services in Connection with Drug Rehabilitation

Under any commonsense reading of the Health Services Provision, 42 U.S.C. § 12210(c), Plaintiff's SSP provides both "health services" and services "in connection with drug rehabilitation." DOH's letter to this Court states that SSPs are "an essential component of a public health response to substance use and the overdose crisis" and Gather "operates in an evidence-based and highly effective manner." Dkt. 25-6, Ex. A. The County, too, admits that SSPs "reduce the transmission of HIV, AIDS, viral hepatitis, or other blood-borne diseases," and "provide a first point of contact for formal drug treatment, [and] access to health and counseling service referrals." LCC § 8.80.010(2). Prior to the Ordinance, Gather's SSP provided precisely these health services and referrals: it stabilized its patients' health by distributing lifesaving health supplies and providing wound care and emergency transportation, and facilitated access to drug rehabilitation. Dkt. 25, p. 10:1-26. As a "regulated" program, Gather's SSP meets the definition of "health services" used by Defendants' own expert. Dkt. 45, p. 9:5-17.

Pl.'s Reply in Support of - 9
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

This conclusion aligns with the Health Services Provision's purpose—ensuring illegal drug users retain paths to recovery. Research consistently shows SSPs help people with addiction seek help and effectively access drug rehabilitation. Preventing these individuals from accessing SSPs would thus "exempt from [the ADA's] protections individuals with drug addictions seeking help," reducing the health services provision to "mere surplusage." *RHJ Med. Ctr. v. City of Dubois*, 754 F.Supp.2d 723, 750 (W.D. Pa. 2010).

Finally, Plaintiff's interpretation comports with the plain, unambiguous meaning of the Health Services Provision. *United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). When Congress passed the ADA in 1990, "health" meant the "[s]tate of being hale, sound, or whole in body, mind, or soul, well being. Freedom from pain or sickness." *Health*, Black's Law Dictionary (6th ed. 1990).[3] And "connection" meant "[t]he state of being connected or joined; union by junction[.]" *Id.*[4] Gather's SSP is clearly providing "health services" that are "connected" to drug rehabilitation under the plain meaning of these terms. By stabilizing patient health and reducing the risk of disease transmission, infection, overdose, and death, the SSP supports "freedom from pain or sickness." And it provides these services "in connection with drug rehabilitation" because they facilitate access to drug rehabilitation, as research and Gather's own experience indicate. Dkt. 25-2, p. 8:19-9:2; 42 U.S.C. § 12210(c).

Defendants' interpretation, by contrast, contradicts the plain meaning and design of the Health Services Provision. Defendants assert that "delivery of needles to IV drug users is <u>only</u> a 'health service' insofar as it is actually connected to []additional medical and rehabilitation services." Dkt. 42, p. 12:11-12. As discussed above, Gather's SSP *is* "actually connected to" additional medical and rehabilitation services. Moreover, Defendants provide no textual or practical reason for limiting "health services" to "medical" services or why SSPs are not themselves a "medical service," when they dramatically reduce deadly infectious diseases. Even

---

[3] *See* Merriam-Webster Collegiate Dictionary (9th Ed. 1983) (health means "the condition of being sound in body, mind, or spirit").

[4] *Id.* (connection means "causal or logical relation or sequence" or "contextual relations or associations").

Pl.'s Reply in Support of - 10
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

Defendants' expert concedes that SSPs can be health services. Dkt. 45, p. 9:5-9. Indeed, in drafting the ADA, Congress explicitly broadened "medical services" to "health services." *Compare* 135 Cong.Rec. S10765-01, S10774, 1989 WL183216 *with* 42 U.S.C. § 12210(c). Finally, if permitted, Gather will operate its mobile SSP alongside its mobile MAT clinic, further coordinating its SSP with drug rehabilitation. Meckle Reply Decl. ¶51.

### 2. Patients Are "Otherwise Entitled" to the SSP's Services

Plaintiff's patients are "otherwise entitled" to Gather's SSP because they would qualify for its services in the absence of the Ordinance's restrictions. Under the SSP's eligibility criteria, all members of the community are eligible to receive services, supplies, and information from the SSP. No proof of need, identity, or drug use is required. *Id.* ¶6. Because anyone would qualify for the SSP absent the Ordinance, patients are otherwise entitled.

Courts have specifically rejected Defendants' argument, that patients must qualify for health services in the absence of drug use, Dkt. 45, p. 14:1-12, because that reading would prevent people with addiction from seeking help. *Taylor v. Wexford Health Sources, Inc.*, 737 F.Supp.3d 357, 375 (S.D. W.Va. 2024) ("[I]t would be entirely illogical to refuse to treat opioid use disorder in patients who *use opioids*."); *RHJ Med. Ctr.*, 754 F.Supp.2d at 750 ("If the ADA and RA were interpreted to exempt from its protections individuals with drug addictions seeking help—the argument the Defendant makes—section (c) would be reduced to a nullity.").

Nevertheless, because Plaintiff's patients qualify for the SSP absent drug use, they are "otherwise entitled" even under Defendants' narrow interpretation.

### C. The Ordinance Discriminates on the Basis of Disability

The record establishes that the Ordinance discriminates on the basis of disability in three independent ways. First, the Ordinance facially discriminates on the basis of SUD by imposing onerous restrictions only on SSPs. *See Bay Area Addiction Rsch. And Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 735 (9th Cir. 1999) (geographic restriction on methadone clinics facially discriminated based on patients' SUD). Second, the Ordinance violates the Health Services

Pl.'s Reply in Support of - 11
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

Provision because its restrictions deny people access to the SSP's health services and services in connection with drug rehabilitation. Third, the Ordinance denies disabled patients meaningful access to the SSP—it restricts "clinically-proven and governmentally-approved" health services they require, and their SUD makes travel to the fixed-location SSP difficult. *Smith-Berch, Inc. v. Baltimore Cnty., Md.*, 68 F.Supp.2d 602, 622 (D. Md. 1999). It places greater burdens—thus further denying meaningful access—for patients with mobility and mental health disabilities who relied more heavily on the SSP's mobile clinic because their disabilities make travel more difficult, painful, or altogether impossible. *See Guerra v. W. L.A. Coll.*, 812 F.App'x 612, 614 (9th Cir. 2020) (ending shuttle denied meaningful access where walking to service`s was "challeng[ing]" and "difficult" for physically disabled); *see* Dkt. 25, p. 18:6-25:8.

      Defendants dispute Plaintiff's claims by arguing the Ordinance has not completely eliminated access to the SSP and Plaintiff has not shown discriminatory intent. Both arguments misunderstand disability discrimination law and the factual record.

      First, the ADA does not require "wholesale elimination of services." Dkt. 42, p. 23:2. It prohibits all policies that, "while not creating a direct bar to individuals with disabilities, *indirectly prevent or limit their ability to participate.*" *Cota v. Maxwell-Jolly*, 688 F.Supp.2d 980, 996 (N.D. Cal. 2010) (quoting 28 C.F.R. Pt. 35, App. A). Courts repeatedly invalidate policies, like the Ordinance, that impose "different and greater" burdens on disabled people by rendering access difficult or painful, even if not impossible. *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (invalidating dog quarantine policy even though visually impaired people "can leave their dogs in quarantine and enjoy the public services"); *Guerra*, 812 F.App'x at 614 (physically disabled people lacked meaningful access because accessing services is "challeng[ing]" and "difficult"); *Smith-Berch*, 68 F.Supp.2d at 607, 622-23 (denying permit to methadone clinic discriminated even though patients retained access to another clinic).

      Defendants overstate *Rodde* and *Cercpac*. Dkt. 42, p. 20:17-21:22. *Rodde v. Bonta* did not limit its holding to "wholesale elimination of services"—the hospital closure discriminated

Pl.'s Reply in Support of - 12  
Mot. for Prelim. Inj.  
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union  
425 California St., 7th Floor, San Francisco, CA 94104  
212-549-2500

because, "[a]s in *Crowder*," it "would deny certain disabled individuals meaningful access to government-provided services because of their unique needs, while others would retain access to the same class of services." 357 F.3d 988, 997-98 (9th Cir. 2004). And *Cercpac v. Health & Hosps. Corp.* is inapposite because there, the plaintiffs did not allege that, because of the hospital relocation, disabled children could not access "care available to children without disabilities" or "some additional specialized services that might be required as a reasonable accommodation[s]." 147 F.3d 165, 168 (2d. Cir. 1998). In contrast, here, Plaintiff has demonstrated the Ordinance harms patients by denying them meaningful access to the SSP.

      Nevertheless, Plaintiff has established that the Ordinance has eliminated the mobile SSP and availability of "drug paraphernalia" entirely and has, as a result, functionally eliminated SSP access for most patients and rendered access "difficult" or "painful" for others. Dkt. 25-3, p. 7:5-10; Dkt. 25-5, p. 3:10-13; Dkt. 25-4, p. 2:25-3:6. Public transportation is not a solution because patients' disabilities render access to it difficult, painful, or impossible, and because it does not reach many patients. Dkt. 25-3, p. 15:5-10, Dkt. 25-5, p. 3:12-13.

      Defendants' suggestion that patients can obtain supplies at pharmacies or through delivery is not grounded in reality. Dkt. 42, 23:16-24:8. Because most patients are unhoused, they lack consistent residence to receive deliveries, funds to purchase food and supplies, and bank accounts to place online orders.[5] Dkt. 25-5, p. 3:22-24; Westergard Reply Decl. ¶¶4-5. Moreover, buying supplies would not restore access to the core benefit of the SSP—building trust with patients and connecting them to drug rehabilitation; even Defendants claim they want to increase patients' presence in rehabilitation clinics.

      Nor is transporting patients to the SSP a solution to the Ordinance's harm. Dkt. 42, p. 7:18-20. This would require a small church to transform its evidence-based mobile clinic model into a bus service, necessitating buying new vehicles, and bearing liability, licensing, and

---

[5] Unhoused people face many barriers to bank accounts: minimum balances, fees, and no permanent address. Alison Kretocvic, *Prohibiting Cashless Retailers and Protecting the Impoverished*, 37 Ga. St. U.L.Rev. 1045, 1058 n.79 (2021).

Pl.'s Reply in Support of - 13  
Mot. for Prelim. Inj.  
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union  
425 California St., 7th Floor, San Francisco, CA 94104  
212-549-2500

insurance costs. If Defendants believe bus services are more effective, they have resources to establish and evaluate it without eliminating a proven program. Moreover, Gather only transported patients with whom it developed trust. Most individuals, especially new patients, would not get into a stranger's van based on promises of supplies. Westergard Reply Decl. ¶¶6-7. Further, Gather cannot transport hundreds of patients scattered throughout this large county in its van, even if it devoted 40 hours per week to doing so. *Id.*; Meckle Reply Decl. ¶¶7-8.

Second, Defendants conflate Title II and Section 504's causation standards with *mens rea*.[6] Dkt. 42, p. 24:16-25:15 (citing ADA's "motivating cause" and Section 504's "solely by reason of his disability" *causation* elements to argue the Ordinance must "deliberately intend[] to discriminate"). But Title II and Section 504 contain no *mens rea* requirement in injunctive and declaratory cases and prohibit "nonessential policies and practices that are *neutral on their face,* but deny individuals with disabilities an effective opportunity to participate." 28 C.F.R. Pt. 35, App. B; *Crowder*, 81 F.3d at 1484 (holding ADA prohibits discrimination arising from "thoughtlessness," "indifference," or "benign neglect"). *Collings v. Longview Fibre Co.* is an inapposite Title I intentional discrimination employment case, which applied a pretext analysis element, not present here. 63 F.3d 828, 833 (9th Cir. 1995) (citing *Smith v. Barton*, 914 F.2d 1330, 1340 (9th Cir. 1990)).

### D. Defendants' "Public Health" Interests Cannot Excuse Discrimination

Defendants fail to raise a recognized defense under the ADA and Section 504, for example, that reasonable modifications to the Ordinance would "fundamentally alter" the challenged program. Nor could Defendants raise a fundamental alteration defense because it does not apply here where the Ordinance is facially discriminatory. *Bay Area Addiction*, 179 F.3d at 734. Absent a valid defense, Defendants cannot excuse discrimination based on even

---

[6] To the extent Defendants dispute causation, that argument also fails. Unlike Section 504, the ADA requires that discrimination occur only "by reason of such disability." 42 U.S.C. § 12132. This relaxed standard requires that the Ordinance burdens patients in a "different and greater" manner because of their disabilities. *Crowder*, 81 F.3d at 1484. As discussed above, patients' SUD and mobility or mental health disabilities each create different and greater burdens on their access to the SSP.

Pl.'s Reply in Support of - 14  
Mot. for Prelim. Inj.  
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union  
425 California St., 7th Floor, San Francisco, CA 94104  
212-549-2500

legitimate government interests. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1009 (8th Cir. 1999).

## II.  Preemption

Contrary to Defendants' assertions, Dkt. 42, p. 28:25-29:21, Plaintiff has not argued that state law preempts the field of drug paraphernalia regulation, but rather that "a conflict exists such that the statute and the ordinance may not be harmonized." *Cannabis Action Coal. v. City of Kent*, 351 P.3d 151, 154 (Wash. 2015). Plaintiff has established this conflict—state law authorizes SSPs to distribute "drug paraphernalia" and the Ordinance forbids it. *Compare* Wash. Rev. Code § 69.50.4121(3) *with* LCC §§ 8.80.020(6), 8.80.050-.160. Defendants have not, and cannot, "harmonize" these statutes.

## III.  WLAD

Because Defendants have not responded to Plaintiff's claims under the Washington Law Against Discrimination ("WLAD"), they concede that WLAD omits the ADA's limitations based on current illegal drug use.  *See* Wash. Rev. Code § 49.60.030(1); *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (opposing party waives arguments by not raising them in an opposition). Plaintiff's claim under WLAD is straightforward and uncontested. Thus, success on WLAD is even easier than under the ADA.

Defendants' declarations further establish the Ordinance discriminates under WLAD by treating patients as unwelcome, unaccepted, or undesired because of their SUD. *See* Wash. Rev. Code §§ 49.60.030(1)(b), .040(14). David Clary describes County efforts to "clear out" people who use drugs by sweeping encampments and raiding the "Circus House." Dkt. 46, p. 2:13-3:22. Clary offers these efforts to justify the Ordinance, demonstrating that the County passed the Ordinance to "clear out" people with SUD. *Id.* While the County can enforce its criminal laws, it cannot exclude and deny people with SUD health services.

Pl.'s Reply in Support of - 15
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

## IV. Irreparable Harm

Plaintiff has established three irreparable harms: 1) violation of the ADA and Section 504; 2) elevated risks of disease transmission and overdose; and 3) restrictions on Plaintiff's religious exercise.[7]

Defendants address only the first harm, conceding the second and third.[8] Because Plaintiff has established *likelihood* of success on its disability discrimination claims, it has shown more than a "possibility" of irreparable harm. Dkt. 42, p. 30:26-27.

Defendants argue the Court should withhold relief based on Plaintiff's delay. But "delay is but a single factor to consider in evaluating irreparable injury" and "courts are loath to withhold relief solely on that ground." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). Here, the ongoing irreparable harm to Gather and its patients combined with Plaintiff's investigation and settlement efforts justify relief.

Each day the Ordinance remains in effect, it dramatically elevates risks of disease transmission, infection, and overdose, and frustrates the state's public health efforts. Dkt. 25-7, p. 24:5-26:24. Some patients have already died of overdose. Dkt. 25-3, p. 7:11-17. "[T]ardiness is not particularly probative in the context of ongoing, worsening injuries" like those facing patients. *Douglas*, 757 F.3d at 990.

Moreover, Defendants concede this is a "complex case." Dkt. 29, p. 5:8-9. Plaintiff needed time to investigate and to attempt to settle. Dkt. 29, p. 5:8-11; Dkt. 33, p. 2:16-24. Courts have consistently excused delays based on these good faith actions. *Marks Org., Inc. v. Joles*, 784 F.Supp.2d 322, 332-36 (S.D.N.Y. 2011) (excusing sixteen-month delay based on good faith efforts to investigate claim and attempt settlement); *Commure, Inc. v. Canopy Works,*

---

[7] Contrary to Defendants' argument that the Ordinance "does not otherwise regulate Gather's religious or charitable activities," Dkt. 42, p. 18:8, the Ordinance has prevented Gather from fulfilling it religious mission of serving the "poor, the hungry, the addicted." Dkt. 1 ¶¶1, 16; Dkt. 25, p. 28:16-19; Dkt.25-2, p. 13:21-24. The irreparable harm that Defendants have wrought upon Gather's religious exercise are grounds for a preliminary injunction. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc); *Calif. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022).

[8] While Defendants briefly address overdose rates, they fail to contest the elevated overdose, disease transmission, and infection risks.

Pl.'s Reply in Support of - 16
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

*Inc.*, 792 F.Supp.3d 971, 980-81 (N.D. Cal. 2025) (11-month delay justified where plaintiff attempted settlement and obtained new evidence).

Finally, Plaintiff seeks a prohibitory injunction, to prevent action and preserve the status quo, rather than a mandatory injunction seeking affirmative action. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). "The status quo means the last, uncontested status which preceded the pending controversy." *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010). Plaintiff requests prohibitory relief by requesting Defendants refrain from enforcing the Ordinance to preserve pre-Ordinance conditions—the last uncontested status preceding this case.

## V.  Balance of Equities

The balance of equities favors relief because the Ordinance has eliminated a cornerstone of Washington's response to the opioid crisis. An injunction would restore Plaintiff's ability to comply with and advance state public health policy and allow Gather to fulfill its religious mission. Meanwhile, Defendants lack any interest in enforcing a law that has caused "preventable human suffering." *Rodde*, 357 F.3d at 999. The public interest favors relief.

## CONCLUSION

The Court should grant Plaintiff's Preliminary Injunction Motion.

***

The undersigned certifies that this motion contains 4,196 words, in compliance with the Local Civil Rules.

Pl.'s Reply in Support of - 17
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500

Dated: December 2, 2025

| | |
|---|---|
| By: /s/ Tara Urs<br>Tara Urs (Bar No. 48335)<br>turs@aclu-wa.org<br>La Rond Baker (Bar No. 43610)<br>LBaker@aclu-wa.org<br>ACLU Foundation of Washington<br>P.O. Box 2728<br>Seattle, WA 98111<br><br>Joseph Longley*<br>jlongley@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION<br>915 15th St NW, Seventh Floor<br>Washington, D.C., 20001 | /s/ Malhar Shah<br>Malhar Shah*<br>mshah@aclu.org<br>Zoe Brennan-Krohn*<br>zbrennan-krohn@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION<br>425 California St., 7th Floor<br>San Francisco, CA 94104<br><br>David Howard Sinkman*<br>sinkman@kaplangrady.com<br>Amelia Caramadre*<br>amelia@kaplangrady.com<br>Sarah Grady*<br>sarah@kaplangrady.com<br>Vanessa Del Valle*<br>vanessa@kaplangrady.com<br>Mattie Haag**<br>mattie@kaplangrady.com<br>KAPLAN & GRADY LLC<br>2071 N. Southport Ave., Ste. 205<br>Chicago, Illinois 60614 |

\* *Admitted pro hac vice*
\*\* *Pro hac vice application forthcoming*

Pl.'s Reply in Support of - 18
Mot. for Prelim. Inj.
Case No. 3:25-cv-05850-DGE

American Civil Liberties Union
425 California St., 7th Floor, San Francisco, CA 94104
212-549-2500